UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTWOINE TYRONE TAYLOR, CAROLINE DELTORAL, and NATIVIDAD M. QUILLIN individuals, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM SERVICES LLC, a Delaware limited liability company, and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 1:24-cv-01165-KES-BAM<br><br>ORDER DENYING AMAZON'S MOTION TO DISMISS, GRANTING AMAZON'S MOTION TO STAY, AND DENYING PLAINTIFFS' MOTION TO CONSOLIDATE<br><br>(Doc. Nos. 26, 27) |

This matter is before the Court on (1) the motion to dismiss or stay filed by defendant Amazon.com Services LLC ("Amazon") on October 23, 2024, and (2) the motion to consolidate this case with *Trevino v. Golden State FC LLC*, Lead Case No. 1:18-cv-00120-KES-BAM (E.D. Cal.) ("the *Trevino* action") filed by plaintiffs Antwoine Tyrone Taylor, Caroline Deltoral, and Natividad M. Quillin on November 6, 2024. (Docs. 26, 27.) For the reasons explained below, Amazon's motion to dismiss is denied, its motion to stay is granted, and plaintiffs' motion to consolidate is denied.

1

# BACKGROUND

## A.   Procedural Background

On July 2, 2024, plaintiffs Taylor, Deltoral, and Quillin filed a putative class action complaint in the San Bernardino Superior Court against Amazon on behalf of themselves and all non-exempt, hourly employees in California who worked for Amazon during the proposed class period. (Doc. 1-3 at 2, 4, 19.)  The complaint alleged that Amazon violated provisions of the California Labor Code, relevant orders of the California Industrial Welfare Commission ("IWC"), and California Business & Professions Code § 17200 *et seq.* (*Id.* at ¶ 1.)  Amazon removed the case to the U.S. District Court for the Central District of California on August 15, 2024.  (Docs. 1; 1-9 at 2.)  Plaintiffs subsequently filed a first amended complaint ("FAC") on September 23, 2024.  (Docs. 16–18.)

The district court in the Central District of California granted the parties' stipulated request to transfer this action to this district under 28 U.S.C. § 1404(a) and the first-to-file rule. (Doc. 22.)  The court found that the plaintiffs in *Trevino* "raise factual and legal issues that are substantially similar (and in some instances, identical) to this one and assert claims against the same defendant." (*Id.* at 2; *see also* Doc. 20 at 2.)  The case was transferred to this Court on October 2, 2024.  (Doc. 23.)

Thereafter, on October 23, 2024, Amazon filed its motion to dismiss or stay this case, or in the alternative, to dismiss plaintiffs' eleventh cause of action pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6).[1]  (Doc. 26.)  On November 6, 2024, plaintiffs filed a motion to

---

[1] Amazon relatedly asks the Court to take judicial notice of its exhibits A–Q.  (Doc. 26-2.) Exhibits A–B, D–H, J, L–N, and P–Q, are the operative complaints in thirteen earlier filed wage and hour class actions pending against Amazon.  (*Id.* at 4.)  Exhibits C, I, K, and O are orders from four of these cases.  (*Id.*)  A court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Courts may "take judicial notice of undisputed matters of public record, *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).  Here, all of Amazon's exhibits are in the public record, and their existence is not subject to reasonable dispute.  Accordingly, Amazon's request for judicial notice is granted.  The Court takes judicial notice of these pleadings and their existence, but not the truth of the allegations contained therein.

consolidate this case for all purposes with the *Trevino* action pursuant to FRCP 42(a).  (Doc. 27.)  Both motions are fully briefed and the Court heard argument on the motions on January 21, 2025.  (Docs. 28–31, 35.)

**B.      Factual Background**

As alleged in the FAC, plaintiff Taylor "was employed by Defendants as a packer with duties including unloading trailers, holding the trailer, and packing shipments."  (Doc. 18 at ¶ 2.)  Plaintiff Deltoral "is employed by Defendants as an Order Picker with duties including picking orders, placing merchandise back into bins, and sorting through merchandise in the bins and delivering it to appropriate warehouse locations."  (*Id.*)  Plaintiff Quillin "was employed by Defendants as a warehouse associate with duties including picking and packing and scanning and sorting packages and products for delivery to Defendants' customers."  (*Id.*)  "Plaintiffs were assigned to work in California and in the Riverside and San Bernardino County areas during the relevant time period, and Plaintiffs and the similarly situated Class members worked at various locations throughout California."  (*Id.*)

Based on the allegations summarized below, the FAC asserts the following California state law causes of action against Amazon: (1) failure to pay minimum wages; (2) failure to pay wages and overtime under Labor Code § 510; (3) meal period liability under Labor Code § 226.7; (4) rest break liability under Labor Code § 226.7; (5) failure to pay all sick leave pay in violation of Labor Code § 246; (6) failure to provide accurate wage statements in violation of Labor Code § 226(a); (7) unlawfully collecting wages from employees in violation of Labor Code § 221; (8) failure to pay all wages owed in violation of Labor Code § 204; (9) failure to pay wages when due in violation of Labor Code § 203; (10) failure to maintain temperatures under the IWC Wage Orders; (11) violation of Business & Professions Code § 17200 *et seq.*; and (12) a California Private Attorneys General Act ("PAGA") claim seeking penalties pursuant to Labor Code § 2698 *et. seq.*  (Doc. 18 at ¶¶ 52–139.)

According to plaintiffs, their claims "generally fall into four categories: (1) unpaid wages, (2) meal periods and rest breaks, (3) failure to maintain reasonable temperatures, and (4) derivative claims."  (Doc. 28 at 5.)

3

As to unpaid wages, plaintiffs assert various theories of off-the-clock work that they allege led to Amazon failing to pay them "all wages due." (Doc. 18 at ¶¶ 3, 9, 53, 66.) First, plaintiffs allege off-the-clock work resulting from security screening. (*Id.* ¶ 11.) Plaintiffs allege Amazon forced them to undergo "exit security checks and screenings" after they clocked out, which entailed waiting in line to pass through a metal detector or to be "wanded" by Amazon's security personnel and then submitting to a bag search. (*Id.*) Plaintiffs allege this process took "around 5 minutes to complete each time," for which they were uncompensated. (*Id.* at ¶ 11; *see also id.* at ¶¶ 16–17.)

Second, plaintiffs claim that from approximately March of 2020 to March of 2023 Amazon "required [e]mployees to undergo COVID screenings and temperature checks before [they] clocked in for their daily work shifts," which resulted in "approximately 2–3 minutes per day" of uncompensated time under Amazon's control. (*Id.* at ¶ 12.)

Third, plaintiffs allege Amazon underpaid overtime wages by failing to include "performance based bonuses and shift differentials" in the regular rate calculation. (*Id.* at ¶¶ 14, 16.) Plaintiffs also claim Amazon failed to pay "shift premiums" to class members who worked night shifts, (*id.* at ¶ 12), and that Amazon "either failed to pay sick pay or else paid sick pay . . . at the incorrect rate" by paying it at class members' "base hourly rate of pay" rather than their "regular rate of pay." (*Id.* at ¶ 88.)

Fourth, plaintiffs allege Amazon "imposed difficult to attain production and job and shift scheduling requirements [that] . . . resulted in off the clock work," including during "meal periods when they were required to be clocked out." (*Id.* at ¶¶ 53, 67.) Plaintiff Deltoral also alleges off-the-clock work from having to "don protective gear such as safety harnesses, [a] hard hat, and [a] reflector vest before she was permitted to clock in." (*Id.* at ¶ 13.)

Regarding meal periods and rest breaks, plaintiffs allege Amazon "failed to provide Plaintiffs and the Class members with their required first and second meal periods, and their first, second, and third required rest breaks." (*Id.* at ¶ 21; *see also id.* at ¶¶ 75, 81.) Plaintiffs assert that class members "were regularly subjected to interrupted meal breaks and would seldom take rest breaks" because Amazon "pushed them to achieve . . . difficult productivity demands and

4

production criteria." (*Id.* at ¶ 22.) As to second meal periods, plaintiffs allege Amazon relied on waivers that "were either invalid or ineffectual" or were not signed. (*Id.* at ¶ 22.) Plaintiffs also allege Amazon did not allow them to "leave their work premises during rest breaks" such that they remained under Amazon's control. (*Id.* at ¶ 81.) Additionally, plaintiffs claim Amazon either did not pay the required premiums when class members missed their meal periods and rest breaks or underpaid the premiums by failing to "include all forms of remuneration in the regular rate used to calculate" the amounts paid. (*Id.* at ¶ 23; *see also id.* at ¶¶ 29, 77, 84.)

As to the temperature category, plaintiffs allege that Amazon failed to maintain reasonable temperatures at its worksites. (*Id.* at ¶¶ 36, 119.) Finally, plaintiffs' derivative claims include wage statement (Cal. Lab. Code § 226), waiting time (*id.* at § 203), timely payment (*id.* at § 204), wage collection (*id.* at § 221), PAGA (*id.* at § 2698 *et seq.*) and UCL claims (Cal. Bus. & Prof. Code § 17200). (*See* Doc. 18 at ¶¶ 32, 35, 102, 107, 111, 128, 134.)

**C.    Proposed Classes**

Plaintiffs seek to represent the following class and subclasses:

> All individuals employed by Defendants at any time during the period of four (4) years prior to the filing of this lawsuit and ending on a date as determined by the Court ("the Class Period"), and who have been employed as non-exempt, hourly employees by Defendants within the State of California.

> Subclass 1. Minimum Wages Subclass. All Class members who were not compensated for all hours worked for Defendants at the applicable minimum wage.

> Subclass 2. Wages and Overtime Subclass. All Class members who were not compensated for all hours worked for Defendants at the required rates of pay, including for all hours worked in excess of eight in a day and/or forty in a week.

> Subclass 3. Meal Period Subclass. All Class members who were subject to Defendants' policy and/or practice of failing to provide unpaid 30-minute uninterrupted and duty-free meal periods or one hour of pay at the Employee's regular rate of compensation in lieu thereof.

> Subclass 4. Rest Break Subclass. All Class members who were subject to Defendants' policy and/or practice of failing to authorize and permit Employees to take uninterrupted, duty-free, 10-minute rest periods for every four hours worked, or major fraction thereof, and failing to pay one hour of pay at the Employee's regular rate of compensation in lieu thereof.

5

   Subclass 5. Sick Pay Subclass. All Class members who were paid non-discretionary wages and sick pay during the same workweek.

   Subclass 6. Wage Statement Subclass. All Class members who, within the applicable limitations period, were not provided with accurate itemized wage statements.

   Subclass 7. Unauthorized Deductions from Wages Subclass. All Class members who were subject to Defendants' policy and/or practice of deducting wages earned from their pay, including by requiring off the clock work.

   Subclass 8. Failure to Timely Pay Wages Twice Monthly Subclass. All Class members who were subject to Defendants' policy and practice of not timely paying all wages earned when they were due and payable at least twice monthly.

   Subclass 9. Termination Pay Subclass. All Class members who, within the applicable limitations period, either voluntarily or involuntarily separated from their employment and were subject to Defendants' policy and/or practice of failing to timely pay wages upon termination.

   Subclass 10. Failure to Maintain Reasonable Temperature Subclass: All Class members who, within the applicable limitations period, were required by Defendants to work in areas with temperatures that were not maintained to provide reasonable comfort consistent with applicable standards.

   Subclass 11. UCL Subclass. All Class members who are owed restitution as a result of Defendants' business acts and practices, to the extent such acts and practices are found to be unlawful, deceptive, and/or unfair.

(*Id.* at ¶ 39.)

## DISCUSSION

As noted above, Amazon moves to dismiss or stay this case pursuant to the Court's inherent authority to manage its docket or the first-to-file rule, or alternatively, to dismiss plaintiffs' eleventh cause of action pursuant to FRCP 12(b)(6). (Doc. 26.) Plaintiffs move to consolidate this case with the *Trevino* action under FRCP 42(a). (Doc. 27.) Because the parties make arguments as to consolidation in the briefing for both motions, the Court will consider that issue first before turning to Amazon's motion.

///

///

///

**A.     Plaintiffs' Motion to Consolidate**

      1.     <u>Legal Standard</u>

Federal Rule of Civil Procedure 42(a) states, "[i]f actions before the court involve a common question of law or fact, the court may:  (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."  Fed. R. Civ. P. 42(a).  The purpose of Rule 42 "is to give the district court broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties."  9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2381 (3d ed. June 2024).

A court exercising its "broad discretion" under Rule 42, "weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause."  *Huene v. United States*, 743 F.2d 703, 704 (9th Cir.), *on reh'g*, 753 F.2d 1081 (9th Cir. 1984).  "Factors to be weighed include the risk of prejudice and confusion; risk of inconsistent adjudications of common factual and legal issues; burden on parties, witnesses, and available judicial resources; delay; and expense."  *Campbell v. PricewaterhouseCoopers*, No. CIV S-06-2376LKK/GGH, 2008 WL 3836972, at *3 (E.D. Cal. Aug. 14, 2008) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990)).  The moving party bears the burden of showing consolidation is appropriate.  *Cadena v. Am. Honda Motor Co.*, No. CV 20-511-MWF (PJWX), 2020 WL 3107798, at *2 (C.D. Cal. June 9, 2020) (citing *In re Repetitive Stress Inj. Litig.*, 11 F.3d 368, 373 (2d Cir. 1993), *on reh'g*, 35 F.3d 637 (2d Cir. 1994)).

      2.     <u>Analysis</u>

Plaintiffs argue that consolidation is appropriate under FRCP 42(a) because this case and the *Trevino* action share common issues of law and fact and consolidation will promote judicial economy and will not cause undue delay, expense, or prejudice.  Amazon concedes that this case and *Trevino* share common issues of law and fact but argues that consolidation would delay resolution of the *Trevino* action.  In particular, Amazon highlights the differing procedural postures of the two cases.  For the reasons set forth below, the Court agrees with Amazon.

Even if common facts or legal issues exist, consolidation is "inappropriate if it results in

'inefficiency, inconvenience, or unfair prejudice to a party.'" *Antoninetti v. Chipotle Mexican Grill, Inc.*, No. 06CV2671-J WMC, 2007 WL 2669531, at *2 (S.D. Cal. Sept. 7, 2007) (quoting *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998)). "[T]he district court may deny consolidation [for example,] when one of the actions has proceeded further in the discovery process than the other." Wright & Miller, *supra*, at § 2383 & n.11 (collecting cases).

Here, although this case and *Trevino* share common issues of fact and law, the two cases substantially differ in their procedural postures. In *Trevino*, a now eight-year-old case, the parties have responded to written discovery, completed document productions, taken depositions, and extensively briefed class certification regarding eleven subclasses comprised of distinct theories of alleged Labor Code violations, including security screening, meal periods, rest breaks, rounding, unpaid wages, impermissible rounding of time worked, and other topics. The parties in *Trevino* await a ruling on pending findings and recommendations regarding class certification. In contrast, the original complaint in this case was filed approximately six months ago. The parties have stipulated to vacate the scheduling conference originally set for January 15, 2025, along with any deadlines under Rules 16(b) and 26(f) pending resolution of Amazon's motion to dismiss. In short, the initial scheduling order in this case has not even been issued and this case is in the earliest stage of litigation.

While plaintiffs argue that no delay will result from consolidating this new case with the eight-year-old *Trevino* litigation, that argument is inconsistent with their position that this case is not simply a duplicate of the *Trevino* action. There is undeniably significant overlap between the two cases, but in opposition to Amazon's motion to dismiss plaintiffs highlight the additional allegations in the present case, including as to claims and time periods.[2] Consolidation would in all likelihood result in further delay in *Trevino* while the parties conduct discovery and motion practice on the additional claims and classes asserted in this action.

Plaintiffs' have not sufficiently established that consolidation is appropriate. While they maintain that consolidating the actions will "avoid duplicative discovery demands and responses,

---

[2] For example, plaintiffs have identified the "temperature maintenance claims and the purported expense indemnification claim in the Taylor Action" as not asserted in *Trevino*. (Doc. 28 at 9.)

duplicative motion practice, and avoid the risk of inconsistent rulings," (Doc. 27 at 11), any such concerns are lessened by the Court's finding below that a stay of this action is warranted pending further developments in the *Trevino* action. Further, any "saving of time and effort consolidation would produce" is outweighed by the "inconvenience, delay, or expense that [consolidation] would cause." *Huene v. United States*, 743 F.2d 703, 704 (9th Cir.), *on reh'g*, 753 F.2d 1081 (9th Cir. 1984). Additionally, as *Trevino* progresses, the doctrines of *res judicata* and collateral estoppel may become relevant to prevent duplicative motions on claims or issues which have already been litigated and decided.

For these reasons, the Court declines to consolidate this case with the *Trevino* action. Plaintiffs' motion to consolidate is denied.

**B.     Amazon's Motion to Dismiss or Stay Action**

Amazon requests a dismissal or stay of this action either pursuant to the Court's inherent authority to manage its docket or under the first-to-file rule, arguing that this case "brings claims that are nearly identical to thirteen earlier-filed actions pending in federal and state courts across California." (Doc. 26 at 14.) In the alternative, Amazon seeks to dismiss plaintiffs' eleventh cause of action for equitable relief under the California Unfair Competition Law ("UCL"). Amazon relies on the legal standards commonly identified for the doctrine of claim splitting. *Compare* (Doc. 26 at 14–18) *with Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 886 (9th Cir. 2022). In response, plaintiffs largely reiterate their arguments for consolidation of this action with *Trevino*.

   1.   Dismissal or Stay of this Action

      a.   *Amazon Fails to Establish a Basis for Dismissal*

The parties agree that there is significant overlap between this case and *Trevino*. Amazon argues that the significant overlap warrants dismissal of this case as duplicative. "Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Mendoza*, 30 F.4th at 886 (citation and internal quotation marks omitted). In such circumstances, "[a]fter weighing the equities of the case, the district court may exercise its discretion to dismiss a duplicative later-filed action, to

9

stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions." *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007). "[I]n assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Id.* at 689.

Amazon has failed to establish, at this juncture, that there is sufficient privity of parties and claims between this case and *Trevino* to warrant dismissal of this action. Whether successive causes of action are the same turns on application of the "transaction test, developed in the context of claim preclusion." *Adams*, 487 F.3d at 688. In applying that test, four criteria are examined:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Mendoza*, 30 F.4th at 887; *Adams*, 487 F.3d at 689.[3] Whether the two suits arise out of the same transactional nucleus of facts is the most important factor. *Mendoza*, 30 F.4th at 887.

Determining whether the parties or privies to the action are the same turns on whether a nonparty to a first action "was 'adequately represented by someone with the same interests who was a party' to the first suit." *Id.* (quoting *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008)). As the Supreme Court has explained, a nonparty is adequately represented in a prior suit when, "at a minimum: (1) The interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Taylor*, 553 U.S. at 900.

In *Taylor*, the Supreme Court noted that "adequate representation sometimes requires . . .

---

[3] In *Mendoza*, the Ninth Circuit noted that this test applies in "federal-question-based suits." *Mendoza*, 30 F.4th at 886. *Adams* was also a federal question-based suit. *See Adams*, 487 F.3d at 687. Here, jurisdiction is predicated on 28 U.S.C. § 1332(d) and plaintiffs exclusively assert California state law claims. As neither party questions the application of the *Adams* test in the context of this case and the parties do not identify any inconsistency with applicable California law, the Court will likewise apply the test on this motion.

notice of the original suit to the persons alleged to have been represented," and that, "[i]n the class-action context, these limitations are implemented by the procedural safeguards contained in Federal Rule of Civil Procedure 23." *Taylor v. Sturgell*, 553 U.S. 880, 900–01 (2008) (citing *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 801 (1996)).  Here, both parties acknowledge that the putative class members in this case significantly overlap with the putative class members in *Trevino* and other related cases.  But certification of the classes and claims has not yet occurred in *Trevino* and the prospective class members there have yet to receive notice and an opportunity to opt-out of litigation.  Fed. R. Civ. P. 23(c)(2)(B).  At this juncture in the proceedings in this case and *Trevino*, the Court cannot determine there is sufficient privity of claims and parties to warrant dismissal of this action.  Therefore, Amazon's motion to dismiss this action is denied without prejudice.

        b.    *Motion to Stay*

            i.    Legal Standard

A district court may stay proceedings pursuant to its inherent power to "control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  "The exertion of this power calls for the exercise of a sound discretion." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  The competing interests that a district court must weigh in deciding whether to grant a stay include the following: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* (citing *Landis*, 299 U.S. at 254–55).

Another proceeding that may have a substantial impact on the case may constitute a compelling reason to grant a stay.  A district court therefore may "find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).  "This rule applies whether the separate proceedings

are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* at 863–64.

                    ii.          Analysis

First, with respect to damage that could result from a stay, plaintiffs argue they "have individual claims and pursuant to the Due Process Clause of the United States Constitution, they must continue to be afforded their right to pursue their individual claims unencumbered." (Doc. 28 at 8.) In response to this point, Amazon correctly argues that plaintiffs' claims appear largely duplicative of those in *Trevino* and that the putative classes largely overlap those in *Trevino* and related actions. Moreover, plaintiffs' claims are essentially for money damages, and "[a] delay in recovering monetary damages is not sufficient harm to warrant denying a stay." *Reynolds v. Geico Corp.*, No. 2:16-CV-01940-SU, 2017 WL 815238, at *2 (D. Or. Mar. 1, 2017). Therefore, this interest does not undermine the appropriateness of a stay.

Second, Amazon argues it would face hardship and inequity in having to litigate the duplicative claims asserted here. Plaintiffs do not specifically address the second *Landis* factor, indicating their concession on this point. *See Miller v. Ford Motor Co.*, 620 F. Supp. 3d 1045, 1066 (E.D. Cal. 2022). It does appear that Amazon would face hardship in being required to go forward in this case given the substantial similarities in claims asserted across other cases, including *Trevino*. At a minimum, considering that the resolution of certain claims in *Trevino* may render the same claims asserted here moot, duplicative litigation on those claims is wasteful. *Kelley v. Colonial Penn Life Ins. Co.*, No. CV 20-3348 MWF-E, 2020 WL 6150922, at *6 (C.D. Cal. July 13, 2020) (finding hardship where claims "might be rendered moot" and noting "courts have repeatedly granted a stay where it would conserve resources and avoid potentially unnecessary litigation."). This interest favors a stay.

Third, Amazon argues that given the substantial overlap in the claims asserted in this case and *Trevino*, a stay of this case pending further developments in *Trevino* is likely to result in a narrowing of the issues in this action. In their opposition, plaintiffs agree that there are overlapping claims and facts between this case and *Trevino*. They spend most of their opposition arguing in favor of consolidation based on that overlap, even noting that this case and *Trevino* are

"likely to raise the same or similar issues relative to class certification and dispositive motion practice." (Doc. 28 at 11.) Accordingly, it follows that a stay pending further developments in *Trevino* would result in the narrowing of factual issues and questions of law in this case. The similarity of issues between the cases favors a stay based on the efficiencies that would result from the resolution of issues in *Trevino*. *See Leyva*, 593 F.2d at 863.

For these reasons, Amazon's motion for a stay of this action is granted.

2. <u>Plaintiffs' UCL Claim</u>

Given that the Court grants Amazon's motion to stay this case, the Court declines to address Amazon's alternative motion to dismiss plaintiff's UCL claim (11th cause of action) at this time.

**CONCLUSION**

For the reasons explained above:

1. Plaintiffs' motion to consolidate this case with *Trevino*, (Doc. 26), is denied;
2. Amazon's motion, (Doc. 27), is granted in part and denied in part as follows:
   a. Amazon's motion to dismiss this action is denied without prejudice; and
   b. Amazon's motion to stay this action is granted.
3. This action is stayed pending further developments in *Trevino*.
4. The parties shall file a joint status report within thirty (30) days of the decision on class certification in *Trevino*.

IT IS SO ORDERED.

Dated:   January 25, 2025

_____
UNITED STATES DISTRICT JUDGE